IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

REBA G. WEAVER, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-07-361-FHS
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
        Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Reba G. Weaver ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 15, 1957 and was 49 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a service clerk. Claimant alleges an inability to work beginning January 15, 2004 due to obesity, systemic lupus erythematosus, degenerative arthritis in her right knee, and deep vein thrombosis.

### Procedural History

On July 26, 2004, Claimant protectively filed for disability

3

insurance benefits under Title II (42 U.S.C. § 401, *et seq.*). Claimant's application was denied initially and upon reconsideration. On October 11, 2006, a hearing was held before ALJ Richard J. Kallsnick in Tulsa, Oklahoma. By decision dated March 28, 2007, the ALJ found that Claimant was not disabled during the relevant period and denied Claimant's request for benefits. On August 31, 2007, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as a cashier/clerk.

### Errors Alleged for Review

Claimant, acting *pro se* in this appeal, asserts the ALJ committed error in failing to find her combination of physical impairments rendered her disabled and incapable of performing her past relevant work.

### Review of the ALJ's Decision

Although her contentions of error are not set out in a

particularly clear or concise manner, Claimant appears to challenge the ALJ's conclusion that her severe impairments do not restrict her ability to work in her past relevant employment as a clerk. In his decision, the ALJ found Claimant's obesity, lupus, arthritis in her right knee, and deep vein thrombosis constituted "severe impairments." (Tr. 12).

On August 20, 2003, Claimant was evaluated by Dr. Stephanie D. Runyan. She found Claimant suffered from advanced degenerative arthritis in her right knee and a small right knee joint effusion. (Tr. 150).

On September 15, 2003, Claimant was attended by Dr. Carl F. Critchfield. He noted Claimant had swelling of the right leg. Her venous ultrasound was within normal limits with no deep venous thrombus noted. (Tr. 110).

On April 20, 2004, Claimant reported right calf pain. She was treated and released. Claimant was also diagnosed with lupus. (Tr. 143). Claimant was evaluated further on April 23, 2004. (Tr. 147). At an April 30, 2004 visit to the Northeast Oklahoma Community Health Center ("NEOCHC"), Claimant was diagnosed with a possible blood clot. (Tr. 144).

On August 5, 2004, Claimant presented at the NEOCHC, complaining of right knee pain. She was counseled to lose weight, advised to take pain medication, and exercise. (Tr. 143).

On September 3, 2004, Claimant was seen at NEOCHC for a

5

follow-up visit associated with her obesity, lupus, and knee pain. She received medication. (Tr. 139).

On January 27, 2005, Claimant presented for a follow-up appointment, again complaining of right leg pain. She was again advised to lose weight and received medication. (Tr. 135).

On February 9, 2005, Claimant complained at the NEOCHC of right leg pain. She was advised to elevate the leg and prescribed medication. (Tr. 134).

On December 11, 2004, Claimant was evaluated by Dr. Baha Abu-Esheh. He noted Claimant's complaints of and prior treatment for right knee pain and swelling and lupus. She also complained of migraine headaches, paint in her hands, back, and shoulders, skin rashes, and difficulty walking. Claimant stated she worked part time two days per week. (Tr. 115).

Dr. Abu-Esheh found no cynanosis or digital clubbing, no edema or varicosities. He determined no point tenderness, adequate peripheral pulses, grip strength at 5/5 bilaterally, an ability to do gross and find manipulation. He did note swelling in the right knee with possible effusion. However, he also found Claimant had a safe and stable gait with slow speed and limping on the right side secondary to knee pain, no muscle atrophy, no need for assistance devices to ambulate, normal heel/toe walking, and tandem gait within normal limits. (Tr. 117). Dr. Abu-Esheh found no range of motion restrictions. (Tr. 119-120).

On January 12, 2005, Claimant was evaluated by Dr. L. Mungul, who completed a Physical Residual Functional Assessment form after the evaluation. Dr. Mungul concluded Claimant could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, with an unlimited ability to push and/or pull. He found Claimant had full range of motion in her back and all joints. (Tr. 154). Dr. Mungul found no point tenderness, no cyanosis or digital clubbing, no edema, some swelling in the right knee with possible effusion in the knee. Straight leg raising was negative for pain and Claimant was able to do gross and fine manipulation. Her gait was found to be safe and stable with limping on the right side secondary to knee pain. However, she required no assistance. (Tr. 155).

On October 20, 2006, Claimant was evaluated by Mary Gourd, a Physician's Assistant. She found Claimant was restricted to sitting for 2 hours, standing for 10-30 minutes, walking for 10-30 minutes at a time. In an 8 hour workday, Ms. Gourd found Claimant could sit for 6 hours in an 8 hour day, stand for 1 hour, and walk for 1 hour. She found Claimant could occasionally lift and carry up to 10 pounds and had restrictions in pushing and pulling with her legs and hands. (Tr. 167-168). The ALJ found Ms. Gourd was not an "acceptable source" for medical evidence and, therefore, only gave the opinion and associated restrictions weight as an

7

"other source." (Tr. 16).

In his decision, the ALJ found Claimant retained the residual functional capacity to occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds, stand and/or walk for about 6 hours in an 8 hour day, sit for about 6 hours in an 8 hour day, and occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 13).

The ALJ determined Claimant was not entirely credible, considering the medical evidence before him. For instance, Claimant testified she used a cane. (Tr. 188). However, no physician had prescribed such use and, in fact, Claimant's gait was noted on multiple occasions as being safe and stable. Claimant stated in her filings with the Social Security Administration that she made some meals, did laundry, and washed dishes. (Tr. 82). She testified she shopped for groceries once per week. (Tr. 183-184).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. This Court concurs with the ALJ's evaluation of the credibility of Claimant's statements concerning the level of her disability in

8

light of the objective medical evidence in the record. While Claimant's conditions are clearly debilitating, they are not disabling to the extent of preventing her from performing her past relevant light work. The ALJ has sufficiently linked references to the medical record with his findings of credibility to satisfy his obligation under this analysis. Thus, this Court finds no error in his evaluation of credibility.

Further, it is Claimant's burden at step four to establish "that the impairment or combination of impairments prevents h[er] from performing h[er] past work." Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005) quoting Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988). Claimant has failed in this evidentiary burden. Moreover, at step five, upon questioning from the ALJ, the vocational expert testified Claimant could perform work as a laundry sorter, mail room clerk, labeler, and order clerk, ranging from light to sedentary work. (Tr. 192-193). The medical record supports the findings of the ALJ in all respects.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given ten (10) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 17th day of February, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE